IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS
KANSAS CITY DIVISION

In Re:                              )
                                    )
SOUTHERN TAN, INC.,                 )        CASE No. 16-22397-RDB
                                    )        CHAPTER 11
                    DEBTOR.         )

**DEBTOR'S MOTION FOR ORDER AUTHORIZING SALE
OF CERTAIN PERSONAL PROPERTY FREE AND CLEAR OF
ALL LIENS, INTERESTS, AND ENCUMBRANCES, PURSUANT TO 11 U.S.C. § 363**

COMES NOW Southern Tan, Inc., the Debtor and Debtor-in-possession herein, by and through counsel, Colin N. Gotham of Evans & Mullinix, P.A., requests that the Court, pursuant to 11 U.S.C. §§ 363(b), (f) and (m) and § 365, enter its Order Authorizing Sale of Certain Personal Property Free and Clear of Liens, Interests, and Encumbrances, Pursuant to 11 U.S.C. § 363. In support of this Motion, the Debtor states and alleges the following:

**The Debtor**

1.       On December 6, 2016, Southern Tan, Inc., (hereinafter "Debtor") filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). Pursuant to §§ 1107 and 1108 of the Bankruptcy Code, the Debtor remains as Debtor-in-Possession.

**Jurisdiction**

2.   The Debtor operates one tanning salon within the Kansas City area at the following locations:

      A.  13511 S. Mur-Len Road, #132, Olathe, KS 66062

3.       The Court has jurisdiction over this motion pursuant to 28 U.S.C. § 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2) and venue of this bankruptcy

proceeding and this Motion is proper under 28 U.S.C. §§ 1408 and 1409. The statutory

predicates for the relief sought herein are 11 U.S.C. §§ 105(a), 363(b) and (f).

## **Relief Requested and Applicable Authority**

4.     The Debtor desires to sell the following property (the "Assets") to EA Global

Enterprises, LLC, Olathe, KS an unrelated third party,  for the sum of $84,850.00 pursuant to the

Agreement for Purchase and Sale of Assets attached hereto as Exhibit 1.

5.     These assets comprise of the equipment located at 13511 S. Mur-Len Road, #132,

Olathe, KS location.

6.     The sale shall be free and clear of all liens, interests, and encumbrances, pursuant

11 U.S.C. § 363.

7.     Accordingly, the Debtor seeks this Court's approval authorizing the Debtor to sell

the Assets free and clear of all liens, interests and encumbrances.

## **Selling Procedures**

8.     The Debtor believes that this sale is in the best interests of the Chapter 11 estate

and its creditors, is proposed in good faith, and is fully justified.

9.     The Debtor, therefore, requests that it be authorized to complete and to conduct

the sale of the Assets and any other recovered personal property, pursuant to §363(b) of the

Bankruptcy Code, which permits sale of the property of the estate, other than in the ordinary

course of business, after notice and hearing.

## **Sale Free and Clear of Liens**

10.     11 U.S.C. § 363(f) provides:

(a)     The trustee may sell property under subsection (b) or (c) of this section

free and clear of any interest in such property of an entity other than the estate, only if

(1) applicable non-bankruptcy law permits sale of such property free and clear of such interest;

(2) such entity consents;

(3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(4) such interest is in bona fide dispute; or

(5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11.     Pursuant to 11 U.S.C. § 363(f), the Debtor seeks authority to sell and transfer the Assets free and clear of all liens, with any such liens to attach to the proceeds of the sale of the Assets, subject to any rights and defenses of the Debtor and other parties in interest with respect thereto.

12.     A sale free and clear of liens is necessary to maximize the value of the Assets. A sale subject to liens would result in lower purchase prices, which would be of substantially less benefit to the Debtor's estate.

13.     A sale free and clear of liens is particularly appropriate under the circumstances because any lien in, to, or against the Assets that exists immediately prior to the closing of the sale will attach to the sale proceeds with the same validity, priority, force and effect as it had at such time, subject to the rights and defenses of the Debtor or any party in interest. Moreover, any holder of a lien that receives notice of the sale, and which fails to object to the sale of the Assets free and clear of liens should be deemed to consent to the sale, thereby complying with §363(f)(2) of the Bankruptcy Code.

WHEREFORE, the Debtor respectfully requests that this Court:

(a)     Authorizes the sale of the Debtor's Assets as set forth above;

(b)     Order that the sale of the Assets be free and clear of any and all mortgages, liens, pledges, hypothecations, security interests, charges, encumbrances, claims and interests, except as limited herein;

(c)     Grants such other and further relief as the court deems just and proper.

Respectfully Submitted:

EVANS & MULLINIX, P.A.


*/s/ Colin N. Gotham*
Colin N. Gotham, KS#19538
7225 Renner Road, Suite 200
Shawnee, KS  66217
(913) 962-8700; (913) 962-8701 (FAX)
ATTORNEYS FOR DEBTOR
cgotham@emlawkc.com


## **CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of the above and foregoing Motion was filed and served electronically by the Clerk of the Court to all parties receiving electronic notice and mailed by U.S. mail, postage prepaid the 27th day of August, 2018 to all parties listed on the creditor matrix.


*/s/ Colin N. Gotham*
Colin N. Gotham

EXHIBIT 1

00796390

5

## AGREEMENT FOR PURCHASE AND SALE OF ASSETS

THIS AGREEMENT FOR PURCHASE AND SALE OF ASSETS (the "Agreement") is made and entered into effectively as of the___ day of August 2018, by and between Southern Tan, Inc., a Kansas Corporation (hereinafter "Seller"), and EA Global Enterprises. LLC (hereinafter "Buyer").

WHEREAS, Seller owns all of the assets of 13511 South Mur-Len Road, #132; Olathe, Kansas 66062 (hereinafter referred to as the "Location" or the "Business"), and the Seller desires to sell to the Buyer good right, title and interest which it has in and to certain assets of the business, including the goodwill therein, which are more particularly described in Exhibit "A" (the "Assets"), and excluding any interest or stock in the Seller, and also excluding any debts, liabilities or claims against Seller; and

WHEREAS, Buyer is willing to purchase the Assets on the terms and conditions hereinafter provided,

NOW, THEREFORE, in consideration of the mutual promises, covenants and conditions contained herein, and for valuable consideration, the receipt of which is specifically acknowledged, it is mutually agreed as follows:

### ARTICLE I.
### PURCHASE AND SALE

Section 1.1    Sale and Transfer of Business.  The Seller shall sell and the Buyer shall buy the contents of the Location which primarily includes tanning beds, furniture, and other fixed assets in "as is" condition.    Seller agrees to execute any and all documents necessary to transfer the assets along with said warranties, if any, on a timely basis, whether such documents are to be executed after or before the date of closing. The telephone numbers of (913)764-7826 and (913) 764-8195 shall be transferred to the Buyer along with the website domain of www.mydesignertan.net.

Section 1.2    Bill of Sale.  Seller shall, in connection with this Agreement, execute and deliver unto Buyer at closing the bill of sale, a copy of which is attached hereto as Exhibit "B", and incorporated by reference herein.

Section 1.3    INTENTIONALLY NOT USED

Section 1.4    INTENTIONALLY NOT USED

### ARTICLE II.
### PURCHASE PRICE

Section 2.1         Purchase Price.   The Purchase Price shall be Eighty-Four Thousand Eight Hundred Fifty Dollars ($84,850.00).

00794374

Section 2.2     Transactional Attorney's Fees. Buyer and Seller hereby each agree to be solely responsible for their own attorney's fees and expenses related to this transaction.

Section 2.3     Method of Payment and Payments to Others. On or before noon on September 28, 2018, Buyer shall make a payment to the Seller of Eighty-Four Thousand Eight Hundred Fifty Dollars ($84,850.00). The payment shall be made by cashier's check and made payable to Southern Tan, Inc.

## ARTICLE III.
## LIABILITIES AND ENCUMBRANCES

No liabilities of Seller shall be assumed by the Buyer except as specifically enumerated herein in Exhibit C and Seller agrees to indemnify and hold Buyer harmless from any and all liabilities of Seller not specified in Exhibit C. No liabilities of Buyer shall be assumed by the Seller other than those specifically enumerated in this agreement and Buyer agrees to indemnify and hold Seller harmless from any and all liabilities of Buyer hereunder.

Buyer agrees to fully and completely honor any and all customer contracts in existence at the time of Closing. This list of customer contracts is attached hereto as Exhibit D.

Buyer will also assume the lease for the premises at the Location attached hereto as Exhibit E. Buyer will also assume the contract for the website agreement attached as Exhibit F.

## ARTICLE IV.
## CLOSING

Section 4.1     Closing. The closing shall take place on or before September 28, 2018 at Evans & Mullinix, P.A., at 1:00 o'clock P.M. or as mutually agreed upon by the Parties. The closing will be effective as of the close of business of the actual time and date of closing. At the time of closing, bills of sale and other instruments of transfer of said business and property thereof, and other closing documents described herein shall be delivered by Seller to Buyer. Upon the transfer of the items by Seller to be transferred, the sale shall be effective, and Buyer shall have possession of the Assets upon the closing or shortly thereafter.

Section 4.2     Instruments of Conveyance. Seller covenants with Buyer that the bill of sale to be delivered at the closing will transfer to Buyer all of the assets specified in the attached Exhibit "A" are free of all liens, encumbrances or claims whatsoever

Section 4.3     <u>Cooperation</u>.     The parties agree to execute any and all documents, papers or memoranda that may be necessary to carry out the terms of this Agreement.

ARTICLE V.
### REPRESENTATIONS AND WARRANTIES AND COVENANTS

Section 5.1     <u>Seller's Representations and Warranties and Covenants</u>.   Seller warrants and represents and covenants the following, each of which shall survive:

Seller is the owner of all of the Assets agreed to be sold and transferred under this Agreement, said transfer to be free and clear of all liens, claims and encumbrances whatsoever and that Seller shall forever defend such title against any and all claims and demands of all persons claiming by, though, or under the Seller.

Seller has full power, authority and legal right to execute, deliver and perform its obligations under this Agreement.

Seller warrants clear title to the assets sold. Both Seller and Buyer warrant that they are not aware of any undisclosed liabilities or claims, actual, anticipated, contingent or otherwise which have not been disclosed to the other party.

During the period from the date of this Agreement to the date of closing, Seller has afforded Buyer access to the store.

Seller shall indemnify Buyer for any liability arising from the operation of the business prior to the date of closing.

Seller discloses that it is in a pending Ch. 11 bankruptcy case that is pending in the District of Kansas. Seller shall motion the bankruptcy court for the sale of the assets free and clear of liens within 5 days of execution.

David Henshaw agrees that for twenty-four (24) months from the date of closing, he shall not engage in any business activity which is competitive with the Buyer or work for any company which directly competes with the Buyer. Furthermore, this agreement to not compete shall be limited to be within three (3) miles of the Location. In exchange for this agreement not to compete and for his ongoing consulting, David Henshaw shall be employed pursuant to the attached Consulting Agreement, Exhibit G.

ARTICLE VI.
### BUYER'S REPRESENTATIONS AND WARRANTIES

Section 6.1     <u>Billing and Collection Practices</u>.   Buyer will use prudent business practices to maximize profits.

00794374

Section 6.2  Good Faith, Client Retention and Customer Growth.  Buyer agrees to act in good faith and follow prudent business management practices in the conduct of the business

Section 6.3  Active Management.  Buyer warrants that it is their intention to actively manage and conduct the affairs of the business personally, and that it does not intend to assign or delegate the management or conduct of the affairs of the Business.

Section 6.4  Buyer shall indemnify Seller, against any liability arising from the operation of the business subsequent to the closing unless such liability was caused by Seller prior to the closing.

Section 6.5  There are no lawsuits filed or pending against the Buyer.

## ARTICLE VII.
## RISK OF CASUALTY LOSS

Section 7.1  Seller's Assumption of Risk.  Seller assumes all risk of loss, destruction, or damage due to fire or other casualty up to and until closing.  Seller further agrees to maintain any and all insurance on said property until the date of closing.

Section 7.2  Buyer's Right to Terminate.  Buyer shall have the right, at Buyer's sole option, to terminate this Agreement if the business of Seller is curtailed, interrupted or destroyed prior to closing by any cause, including by loss, destruction, or damage due to fire or other casualty.  Upon notice to Seller of termination of the Agreement by Buyer, this contract shall forthwith terminate, and Buyer shall be discharged of and from all liability, and the rights of Buyer and Seller resulting from this Agreement shall terminate.

## ARTICLE VIII.
## BUYER'S RIGHTS AND CONDITIONS TO CLOSING

Section 8.1  Business Name.  The Buyer intends to operate the tanning salon under the fictitious business name of Designer Tan.

Section 8.2  INTENTIONALLY NOT USED

Section 8.3  INTENTIONALLY NOT USED

00794374

## ARTICLE IX.
## MISCELLANEOUS

Section 9.1    Mediation.  Both parties to this Agreement agree that in the event of any disagreement regarding any aspect of this transaction or this Agreement, they will attempt to reach an equitable settlement negotiating and working with each other in good faith.  Should those negotiations fail, the parties agree to mediation.  The mediator shall be mutually selected by the Seller and the Buyer.

Section 9.2    Construction of Agreement.  If there is a question as to ambiguity with respect to any word, phrase or provision in this Agreement, no uncertainty or ambiguity shall be construed or resolved against any party under any rule of construction, including the party primarily responsible for the drafting and preparation of the agreement.

Section 9.3    Agreement Binding Upon Heirs.  This Agreement shall be binding upon the heirs, executors, administrators, successors and assigns of the respective parties.

Section 9.4    Controlling Law.  This Agreement shall be construed under the laws of the State of Kansas.

Section 9.5    Section Headings.  The various section headings are inserted for convenience or reference only and shall not affect the meaning or interpretation of this Agreement.

Section 9.6    Integration.  This Agreement, together with the Exhibits, sets forth the entire understanding of the parties and it may not be changed except by a written document signed by both parties hereto.

Section 9.7    Counterparts.   This Agreement may be executed in one (1) or more counterparts, each of which shall be deemed to be an original, but all of which shall constitute one and the same instrument.

Section 9.8    INTENTIONALLY NOT USED

Section 9.9    Severability and Waiver.  If any term, provision, covenant or condition of this Agreement is held to be invalid or unenforceable by Binding Arbitration or a court of competent jurisdiction, the remainder of the provisions shall remain in force and effect.   Waiver or any default or breach of this Agreement, or any element within it shall not be construed as a waiver of any subsequent breach or default.

## ARTICLE X.
## NOTICES

Section 10.1 <u>Notices</u>. Any notice required or desired to be given to either party shall be written and sent by certified mail, return receipt requested, postage prepaid to the parties hereto at the following addresses:

| | | |
|---|---|---|
| **IF TO SELLER AT:** | David Henshaw<br>P.O. Box 25507<br>Overland Park, KS 66225 | With a copy to:<br>Colin Gotham<br>Evans & Mullinix, P.A.<br>7225 Renner Road, St2 200<br>Shawnee, KS 66217 |
| **IF TO BUYER AT:** | EA Global Enterprises, LLC<br>Attn: Erin Iveson<br>13511 S. Mur-Len Rd.<br>Olathe, KS 66062 | With a copy to:<br>None |

The address of either party may be changed by written notice thereof to the other party.

IN WITNESS WHEREOF, the parties have executed this Agreement this __ day of August 2018.

### SELLER

Southern Tan, Inc.

By

_____
David Henshaw, President

### BUYER

EA Global Enterprises, LLC

By

_____
Erin Iveson, Member

00794374

EXHIBIT A

ASSETS

## EXHIBIT B

## SAMPLE BILL OF SALE

**THAT SOUTHERN TAN, LLC.**, a Kansas Corporation ("Seller" or "LBC"), pursuant to the Agreement for Purchase and Sale of Assets dated effective as of August 22 , 2018, (the "Transition Agreement"), between the Seller and EA Global Enterprises, LLC, a Kansas Limited Liability Company, ("Buyer"), for and in consideration of the sum of One Dollar ($1.00) and other good and valuable consideration, the receipt whereof is hereby acknowledged, has **BARGAINED** and **SOLD,** and by these presents does now **GRANT** and **CONVEY**, unto Buyer and its successors and assigns, all of its right, title and interest, if any, in and to the Personal Property, generally described in the Agreement for Purchase and Sale of Assets.

**TO HAVE AND TO HOLD** the same unto Buyer, its successors and assigns.

The property is being conveyed "as is," "where is" and "with all faults" as of the date of this Bill of Sale, without any representation or warranty whatsoever as to its condition, fitness for any particular purpose, merchantability, or any other warranty, express or implied.

**IN WITNESS WHEREOF**, Seller has caused this Bill of Sale to be executed by its duly authorized representative as of September 30 , 2018.

> **SOUTHERN TAN, INC.,**
> a Kansas Corporation
>
>
> DAVID HENSHAW, President

EXHIBIT C

ASSUMED LIABILITIES

NONE

00794374

# EXHIBIT D

## CUSTOMER CONTRACTS

# EXHIBIT E

## PREMISES LEASE

# EXHIBIT F

## WEBSITE CONTRACT

# EXHIBIT G

## CONSULTING AGREEMENT

## CONSULTING AGREEMENT

THIS CONSULTING AGREEMENT is entered into effective as of September _30_ , 2018, by and between EA Global Enterprises, LLC, a Kansas Limited Liability Company (the "Company") and DAVID HENSHAW (the "Consultant").

## RECITAL

A.    The Consultant is the majority owner of Southern Tan, Inc. (the "Seller").

B.    On the date hereof, the Seller has sold certain of its assets to the Company pursuant to an Agreement for Purchase and Sale of Assets dated as of August _22_, 2018 (the "Purchase Agreement").

C.    Upon the closing of the sale, the Company desires to engage Consultant, and the Consultant desires to be engaged, to perform certain consulting services.

## AGREEMENTS

In consideration of the recitals and the mutual agreements herein contained and in the Purchase Agreement, the parties hereto agree as follows:

1.    <u>Consulting Services</u>.

(a)    <u>Services</u>.  During the Term (as defined in Section 2 below), Consultant shall act as a consultant to the Company. In such capacity, Consultant shall provide consulting services as reasonably requested by the Company from time to time, upon reasonable advance notice, in connection with transitioning the Seller's business to the Company.

(b)    <u>Compensation</u>.  The Consultant shall be paid by the Company a monthly consulting fee equal to One Thousand Five Hundred Sixty Dollars ($1,560.00) per month (the "Consulting Fee"). The Consulting Fee for each month shall be payable, by check, no later than the 15th day of the following month.

2.    <u>Consulting Term</u>.  The term of Consultant's engagement under this Agreement shall commence on the date of the "Closing" under the Purchase Agreement and shall continue until the second-year anniversary of the Closing (the "Term"). The Company may terminate this Agreement upon 30 days written notice, but such termination shall be subject to the payment obligations under Section 1(b). The payment obligation survives any termination.

3.    <u>Independent Contractor</u>.  Nothing contained in this Agreement shall be construed as creating a relationship between the Company and Consultant other than that of independent contractor.  Consultant shall not be deemed a partner, employee, joint venture or agent of the Company or any of its subsidiaries and affiliates by virtue of this Agreement and Consultant shall not have any right, power or authority to act in any way in the name of or to bind the Company.  Consultant shall not be, and shall not represent to third parties that Consultant is, authorized or entitled to execute or agree on behalf of the Company or bind the Company to any

agreement (whether oral or written), instrument or document of any kind whatsoever. Consultant has had an opportunity to confer with his own tax advisor with regard to this Agreement and the transactions contemplated hereby. Consultant agrees that he will timely file with the Internal Revenue Service and any applicable state revenue service thereof his own tax returns and that, as an independent contractor, he is responsible for the payment of all applicable taxes, social security, unemployment insurance and other similar payments. Consultant shall not be entitled to benefits associated with employment status, such as medical, dental and life insurance, equity incentives or to participate in any other employee benefit programs.

4.     Governing Law. This Agreement shall be governed by and subject to the laws of the State of Kansas.

5.     Waiver. The failure of either party to insist, in any one or more instances, upon performance of any of the terms or conditions of this Agreement, shall not be construed as a waiver or relinquishment of any rights granted hereunder or the future performance of any such term, covenant or condition.

6.     Amendment; Entire Agreement. This Agreement may be amended only by an agreement in writing signed by both of the parties hereto. This Agreement represents the full and complete understanding of the parties with respect to the subject matter hereof.

7.     Benefit; Assignment. This Agreement shall be binding upon and inure to the benefit and burden of, and shall be enforceable by, the Company and the Consultant, their successors and assigns. This Agreement may not be assigned by the Company or the Consultant without the prior written consent of the other, except that the Company may, without the Consultant's consent, assign this Agreement to another entity controlled by, or under common control with, the Company.

8.     Notices. Any notice or communication required to be given by either party hereunder shall be in writing and shall be hand delivered or sent by registered mail, return receipt requested or by confirmed facsimile transmission to the party receiving such communication at, if applicable, the address set forth in the Purchase Agreement or at such other address as either party may in the future specify to the other party.

9.     Counterparts. This Agreement may be signed in any number of counterparts, each of which shall be an original, with the same effect as if the signatures thereto and hereto were upon the same instrument and delivered in person. Signatures delivered by facsimile or via e-mail in portable document format ("pdf") shall be binding for all purposes hereof.

10.     Agreement Effective as of Closing. The parties obligations under this Agreement (including the Company's payment obligations under Section 1(b)) shall be expressly conditioned on the occurrence of the "Closing" under the Purchase Agreement, and no payments shall be due under this Agreement unless the Closing under the Purchase Agreement has occurred.

*[Remainder of page intentionally left blank; signature page follows]*

IN WITNESS WHEREOF, Consultant and the Company have executed this Consulting Agreement as of the date first above written.

EA Global Enterprises, LLC

BY _____
Erin Iveson, Member


_____
David Henshaw

---

SOUTHERN TAN, INC.

BY _____
David Henshaw, President